EEOC CHARGE NUMBER: 470-2021-00229
Re: STACY L. CORNWELL

STACY L. CORNWELL
EEO COMPLAINT

AGAINST

THE CAKE-BAKE SHOP

1. This complaint is brought by Stacy L. Cornwell (hereinafter Complainant) against The Cake-Bake Shop (hereinafter CakeBake) for employment discrimination based upon age, gender, religion, and disability under the statutory and regulatory provisions of the Age Discrimination in Employment ACT (ADEA), 29 U.S.C. §§ 621-634, Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 *et seq.*, which incorporate, through 42 U.S.C. § 12117(a), the powers, remedies, and procedures set forth in Title VII (Title VII) of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*, Title VII, and any other such federal laws pertaining to unlawful age, gender, religion, and disability discriminatory employment practices.

2. Complainant is a female, born in 1964, with medical conditions that are of the type and character protected by federal law.

3. Complainant lives in Westfield, Indiana.

4. On or about January 28, 2020, Complainant emailed CakeBake in Carmel Indiana regarding employment opportunities. On the same day, CakeBake called to arrange an in-person interview.

5. On or about January 29, 2020, Complainant met with staff of CakeBake. On the way home from the interview, CakeBake phoned to offer Complainant a position at the Carmel store as a part-time Server (a Server waits tables, takes orders, and attends to customers during their dining).

6. On or about February 7, 2020, Complainant commenced working for CakeBake by training with various experienced Servers at the CakeBake store in Carmel. Complainant trained a total of 4 eight-hour shifts with 4 different experienced Servers. Complainant was evaluated and a record was created on a server training checklist that established Complainant was performing all duties competently and in accordance with CakeBake standards. Complainant received all positive reviews.

7. In addition to the afore mentioned training, Complainant also received 1-hour of training in "hosting" which involves greeting and seating guests, and 2-hours of training in Expo on the food line which involves preparing food with the appropriate garnishing.

8. On or about February 15, 2020, Complainant was administered a food and beverage test on the CakeBake premises to ensure she had mastered by memory the items on the CakeBake menu. Complainant passed this examination. She was not given a copy of the test.

9. To Complainant's knowledge, few if any other Servers have been required to take the preliminary food and beverage examination under the same conditions as she was. Many were afforded an

EEOC CHARGE NUMBER: 470-2021-00229
Re: STACY L. CORNWELL

opportunity to take the examination as a group. Others were permitted to take the examination with them and return at a later time with the answers filled in.

10. On or about February 15, 2020, Complainant began working her first shifts without a trainer. She worked part-time averaging 26-32 hours per week.

11. On or about March 13, 2020, CakeBake closed the store due to COVID-19 and all employers were temporarily unable to work.

12. On or about May 20, 2020, Complainant was recalled to work and received a full day of COVID-19 training. Shifts began thereafter and she averaged 40 hours per week.

13. From on or about May 20, 2020, until on or about July 21, 2020, Complainant worked a full-time shift schedule, often performing double shifts (16 hour days) to support CakeBake manning requirements almost exclusively during the day or evening hours. During this period, management of CakeBake provided positive comments on Complainant's work ethic, capability, and customer satisfaction.

14. On or about May 29, 2020, the Operations Director (Angie Daniel) complimented Complainant on her performance and stated that Complainant could grow with company. Ms Daniel suggested that Complainant continue to work hard and learn additional details about the expanding drink and menu options. Complainant discussed that her previous alcoholism and treatment, mentioning her sobriety date, was a contributing factor in not focusing heavily on the alcohol vending approach to CakeBake sales methodology.

15. On or about June 18, 2020, Complainant was unexpectedly called to the office of CalkeBake Operation Director Thom Kamaniski. Mackenzie Petrie who acted as Complainant's serving manager on that day also attended the meeting. However, Complainant's primary supervisor, Kahjyah Bray was not at the meeting and had not been informed that such a meeting was going to take place. At the meeting, Mr. Kamaniski issued Complainant a PIP or Performance Improvement Plan based upon the following accusations:

    a. That Complainant's voids were too high claiming she had 60 since returning to work in May;
    b. That Complainant's comps (that is Compensation or full payment for menu items by CakeBake for errors of a server) were also too high claiming she had 8 since returning to work in May.

Complainant explained to Mr. Kamaniski that some of his concerns regarding her performance were inaccurate. Mr. Kamaniski stated that he was not there to argue and that the decision was his call. The PIP paperwork established expectations that included improving menu knowledge, lower Voids and Comps, faster service, little or no errors, and administration of a menu test that required a 90% pass rate to remain employed no later than June 26, 2020. Complainant also explained to Mr. Kamaniski that any concerns he had with regard to Complainant's knowledge of the alcoholic beverage menu list may be attributable to her alcoholism that she was in recovery for. The next day, Complainant followed up with a message to Mr. Kamaniski again responding to his allegation of 60 voids and 8 comps advising him that this was an error in the number of her

2

EEOC CHARGE NUMBER: 470-2021-00229
Re: STACY L. CORNWELL

    voids and comps. Complainant explained that she in fact only had a total of 6 voids and 0 comps. Mr. Kamaniski did not reply to Complainant's message. It should be noted that the PIP employment dates were also in error as written in the PIP.

16. From on or about June 18, 2020 until on or about July 8, 2020, Complainant's shifts were altered so that she no longer worked regular day hours as before. Rather she was rescheduled to work 4 p.m. to midnight or 5 p.m. to 1 a.m. shifts.

17. On or about July 8, 2020, Complainant was advised that she needed to find time during her shift to take the menu test directed by Mr. Kamaniski reference during the PIP meeting. The only time available given the volume of customers was after Complainant worked her night shift (the 8th in a row / 4 p.m. to midnight). Complainant completed the test sometime after midnight.

18. Complainant continued to work her scheduled evening shifts without any further dialogue from management regarding her performance, PIP, testing, or any related issues. To the contrary, Complainant continued to receive positive feedback from her immediate supervision.

19. On or about the morning of July 21, 2020, Complainant observed on the online scheduling app (known as 7-Shifts) that all of her upcoming shifts had been cancelled. Complainant texted CakeBake supervision via the 7-Shifts app to inquire why her shifts were cancelled. She did not receive a response. Later that day Mr. Kamaniski phoned Complainant and advised her that she had been terminated for failing to pass the menu test that she was administered on or about July 8, 2020. Again he stated that decision was his call and the input from other supervisors or managers wasn't relevant. Further, he stated that Complainant would be required to work through the CakeBake Human Resources office if she had further questions or concerns.

20. Complainant reached out to Human Resources and received a notification via email on or about July 21, 2020. The HR manager (Theresa Tymoski) said she would met with her to discuss the termination. Complainant also emailed Gwen Rodgers, Angie Daniel, and Allison Timpson explaining her concerns, the mistakes in Mr. Kamaniski's allegations of her comps and voids, and her concerns that her age may have been a factor in the termination decision.

21. On or about July 24, 2020, Complainant met in person with Ms. Tymoski near the CakeBake Shop in Carmel at Java Coffee Shop. Ms. Tymoski provided Complainant a copy of the graded menu test. Complainant explained the circumstances of the examination with Ms. Tymoski, the conditions under which the examination was administered, and the inaccuracies in Mr. Kamaniski's evaluation of her performance. Ms. Tymoski asked what Complainant would like to see happen. Complainant told Ms. Tymoski that she would like to return to employment with CakeBake as a Server, Hostess, or even in the Bakery of Kitchen. Ms. Tymoski said she would evaluate the facts and circumstances of the examination as well as Complainants concern with the misinformation regarding Mr. Kamaniski's evaluation of her performance. Ms. Tymoski said she would get back to Complainant on these issues.

22. On or about July 31, 2020, having not received any response from Human Resources, Complainant reached out to Ms. Tymoski via email to see if she had any further information. Ms. Tymoski emailed back explaining again that no positions were available to Complainant based on her failure to obtain a 90% score on the menu test. She also stated that the score wasn't high

EEOC CHARGE NUMBER: 470-2021-00229
Re: STACY L. CORNWELL

    enough for Complainant to even work in the Bakery where a score of 75% is required. Further, she asserted that, "you are not the only one who is being held to this standard, you just happened to be the first one the test was administered to. We had always planned to administer the test to all staff as a requirement to remain in their current positions, a plan that we will be seeing through during the month of August."

23. During the period of Complainant's employment with CakeBake, Complainant, Co-workers and management staff engaged in dialogue at the workplace and on virtual or electronic formats that included (Facebook, Instagram, Snapchat …). Many of this conversations involved personal matters that included issues regarding health and wellness as well as faith and religion. Complainant disclosed her need for medical attention for a hip injury that requires total hip replacement surgery and her faith as a Christian.

24. Complainant has remained in contact with personnel still employed at CakeBake. As of the date of this Complaint, no other employee is known to have been required to take the menu examination under the timeframe set forth by Human Relations or under like conditions that Complainant was terminated for allegedly failing.